IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BRIENNE SPLITTGERBER, | ) | Case No. 8:17-cv-280 |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | |
| | ) | |
| BRADLEY RICE, | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This matter is before the Court on the Motion of the Defendant Bradley Rice's (Rice) motion for summary judgment based upon his defense of qualified immunity. Rice previously moved to dismiss the Amended Complaint for failure to state a claim against him (Filing 27). That motion was granted in part and denied in part. In its order denying Rice's motion to dismiss the Complaint on the basis of qualified immunity, the Court declared it needed additional information before it could make that determination (Filing 36). Effectively, the only claim against the Defendants Rice and Sankey are the claims set forth in the Second Claim For Relief, and alleged violation of title 42 U. S. C. A. §1983 – denial of the Plaintiff's rights to Equal Protection

This motion is filed in conjunction with a similar motion filed by the Defendant Sankey (Filing 81). To avoid duplication, we will cite to portions of the evidence filed by Sankey in support of his motion. (Filing 83).

1

## NATURE OF THE ALLEGATIONS

The Plaintiff Brienne Splittgerber (Brienne) seeks relief on several claims. All of her claims relate directly or indirectly to the undisputed operative fact that as a candidate for the Nebraska State Patrol, she submitted to a medical examination that was performed by the Defendant Stephen Haudrich (Haudrich), a medical doctor. Haudrich performed the examination based upon a written Medical Examination Report which included the elements of the medical examination to be conducted. This examination took place on September 11, 2014.

Relevant to this motion, during that examination, with a nurse present, Dr. Haudrich conducted a visual examination of her genitals and anus. Brienne passed the physical and was admitted to the training academy. She was later hired and took the oath and was employed as a State Patrol Trooper.

In the General Allegations of the Amended Complaint, Brienne opines that she voluntarily submitted to this medical examination as part of the application process. But when she was later "informed" that such an examination of her private parts was not medically necessary (Filing 9, Par. 17), she complained about it to her superior Captain Williams. She claims that because this examination was not necessary she became "increasingly anxious and concerned by the command structures' inaction" (Filing 9, Par. 17).

She now claims that the physical examination violated her equal protection rights. First, because she claims the examination of her genitals and anus was not medically necessary. It is not clear how that claim implicates here "equal protection" claim. Second, she opines that men were not subject to the same visual inspection of their genitals and anus. Finally, Brienne claims that her "complaint" was ignored or not adequately investigated.

Relevant to this motion, she alleged in her Amended Complaint that on February 27, 2017, she asked Rice about the status of "the investigation" (Filing 9, Par 18). At that time, Rice was the Colonel in charge of the Nebraska State Patrol (Par. 6). Recalling the timeline, Brienne was subjected to the unnecessary and discriminatory medical procedure by Haudrich on September 11, 2014. She complained about it to *her superior* Captain Williams in the fall of 2014. Williams is not named in this suit. But she agrees that it was not until February of 2017, more than 2 years later that she she contacted Rice about it.

## STATEMENT OF MATERIAL FACTS

The following material facts are not in dispute:

1) Brienne filed suit against the Defendant Bradley Rice, and others under the provisions of 28 U.S.C. § 1983 alleging a violation of her civil rights.

2) Brienne was an applicant for the Nebraska State Patrol and was required to submit to a medical examination as part of the application. Filing 83-1, page 3, Sankey Deposition 9:22-10:1.

3) The medical examination was conducted pursuant to guidelines established by the Nebraska Law Enforcement Training Center (NLETC). Filing 85-8; Affidavit of Tammy Ringland.

4) Haudrich was an independent contractor physician who performed physical examinations of trooper candidates and was not an employee of the Nebraska State Patrol. Filing 83-1, page 6, Sankey Deposition, 23:10-11; Filing 9, par. 8.

5) The elements of the Medical Examination Report established by NLETC, was not a process that was under the jurisdiction or supervision of the Nebraska State Patrol or Rice. Filing 85-1, Rice Deposition, 41:20-42:22.

6) That in conducting the medical examination, Haudrich followed the Medical Examination Report form and he conducted the examination accordingly. Filing 83-5, page 2-3, Haudrich Discovery Responses, No 6 & 7.

7) Rice did not participate in nor have any authority over, the elements of the physical examination that was given to trooper candidates. Filing 85-1, Rice Deposition, 10:20-11:25; 41:20-42:17.

8) Rice assumed his command as Superintendent of the State Patrol in March of 2015. Filing 85-1, Rice Deposition 28:22-29:1.

9) Upon assuming his official duties, no formal paperwork existed evidencing that Brienne filed any complaint or any grievance related to her physical examination. Filing 83-2, pp 6-7, Splittgerber Deposition 188:17-189:7; Filing 83-7, par.10; Filing 85-1, Sankey Deposition, 30:22-31:2)

10) Sankey, Rice's predecessor, had been aware of the allegations, conducted an investigation and determined that there was nothing improper about the medical examination. Filing 83-1, page 3, Sankey Deposition, 11:14-12:6; Filing 83-7, pars 12-13.

11) Rice first learned of Brienne's complaint about the nature of the physical examination on or about the February of 2017. Filing 85-1, Rice Deposition, 29:2-9.

12) Upon learning of her complaint, Rice immediately sought information through the chain of command and summoned agency Counsel Wendy Wussow and Human Resources Director Jerry Jensen to a meeting to find out information about the status of the complaint. Filing 85-1, Rice Deposition 33:3-34:10.

13) Rice instructed legal counsel and the HR Director to contact the medical facility to find out what was going on. Filing 85-1, Rice Deposition, 35:5-10.

14) Rice responded to Brienne in May of 2017 that he was developing some different protocols for conducting the physicals and recommended a change in the procedure to allow trooper candidates to have a physician of their choice conduct the medical examinations 85-1 Rice Deposition, 39:25-40:1.

15) Rice was relieved of his command on June 30, 2017 Filing 85-1; Rice Deposition, 41:10-14.

## ARGUMENT

QUALIFIED IMMUNITY BARS PLAINTIFF'S CLAIM FOR DAMAGES AGAINST RICE IN HIS INDIVIDUAL CAPACITY

*Standard of Review*

**Fed. R. Civ. P. 56** provides that a party may move for summary judgment on all or a part of the plaintiff's claims. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. A genuine issue of material fact exists if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1989).

*Argument*: *Rice Did Not Violate Brienne's Constitutional Rights*

Whether the Plaintiff can establish her claim that the visual inspection of her genitals and anus were both medically unnecessary, applied only to males, and in some manner violated her civil rights will not be discussed in this brief. However, since Rice is only a party to the Second Claim - limited to the equal protection argument - we will limit our discussion as to whether Rice has qualified immunity from any claim for money damages arising out of the Plaintiff's claim.

Under §1983, to establish liability against a defendant in his individual capacity, because vicarious liability is inapplicable to §1983 suits, a plaintiff must plead and prove that each government-official defendant, through the official's own individual actions, violated the Constitution." *Titus v. Stanton County*, *Neb.,* No. 8:12CV261, 2013 WL 1728575, 5 (D. Neb. April 22, 2013). Liability under §1983 requires a causal link to, and direct responsibility for, the deprivation of rights.

To establish Rice's personal liability, as a supervisory Defendant, Brienne must allege and prove ***specific facts of personal involvement*** in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007). Further, a supervisor cannot be vicariously liable for an employee's actions, and a failure to supervise claim requires deliberate indifference or tacit authorization of the offensive act. *Liebe v. Norton,* 157 F.3d 574, 579 (8th Cir.1998). *See White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994).

The undisputed evidence is that Rice was not associated with the State Patrol at the time of Brienne's physical. Rice was not involved with, or had any authority over, the entity which fashioned the elements of the physical examination for trooper candidates.

Accordingly, Rice engaged in no act or omission that was causally connected to Brienne's claim that the examination by Haudrich violated her right to equal protection of the law.

***Argument: At the Time of the Examination, Neither Brienne nor Haudrich were Employees of the State or Under Rice's Supervision or Control.***

Preliminarily we note that although Breanne filed her complaint after she became an employee of the State patrol. However, the events giving rise to her claims arose prior to her being an employee of the State patrol.

6

The undisputed evidence is that Haudrich the medical doctor who conducted the examination, was not an employee of the State Patrol. Rice did have any supervisory authority over him. Those facts being undisputed, the circumstances under which Rice could be personally liable to Brienne for damages resulting from a medical examination conduct on her by Haudrich would be hard to imagine. Be that as it may, we address Brienne's claims against Rice's defense of qualified immunity.

### *Argument: Rice Did Not Violate Brienne's Clearly Established Civil Rights*

Even assuming that Rice had some supervisory responsibility over the NLETC or Haudrich, or a duty to investigate the claim, Brienne's claim implicates the propriety of the physical examination for fissures, fistula's and hemorrhoids that was requested by the NLETC and the propriety of Haudrich's visual inspection of her genitals and anus for those conditions. Filing 83-9, Section No. 13, "Rectal" examination.

As to the medical necessity of the examination, the agency that determined the necessity of the medical examination is not a party to this suit. So, to the extent that Brienne opines that it is somehow unnecessary for her to be examined for those medical conditions, she has simply sued the wrong parties.

To the extent Brienne opines that examining her for fissures, fistulas and hemorrhoids was not the proper way to determine her fitness for her duties as a trooper, those conditions were not established by Rice or the State Patrol. To the extent Brienne opines that Haudrich's visual examination of the genitals and anus for those conditions was not the proper method of examination for those conditions, that complaint defies common sense. But even if there was a difference of opinion about whether those conditions affected the applicant's abilities as a trooper

7

or there was better way to conduct that examination, the relevant question is what clearly established civil right was violated either by the standard or the examination.

Brienne alleges that Haudrich did not subject males to the same procedure, and this somehow caused a hostile work environment. Although Haudrich denies that was the case, at least this claim this sounds like discrimination based upon her sex. But there is nothing in the form or the standard that limits the examination of those conditions to only females. So, it is not discriminatory on its face.

So, assuming that, as applied, Haudrich made an erroneous medical judgment that he would only conduct the visual inspection of females. Perhaps Haudrich could be faulted for that decision. But as noted, there is no causal connection between Haudrich's actions and any act or omission of Rice that created or sanctioned that decision because Rice was not with the State Patrol at the time.

But even assuming that Rice had been in command of the State Patrol at the time, if the agency responsible for defining the element of the examination believes the element is necessary for the trooper candidate to qualify, how would Rice know, or even have reason to believe that was not the case? If an outside third-party medical doctor conducting the requested examination concluded that the visual examination was the proper method for examining for the condition, how would Rice know or even have reason to believe that was not the case?

If there develops a dispute in the professional community whether the medical conditions were relevant to Brienne's qualifications and/or the visual inspection was not the proper way to examine for those conditions, how would Rice know, or even have reason to believe, which one was correct? The answer is self-evident – he would not and could not know the answer to that medical question.

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).

Determining the question of qualified immunity involves the following two step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Santiago v. Blair*, 707 F.3d 984, 989 (8th Cir. 2013). Courts may address either prong of the analysis first, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

So, at first blush, it would appear that if Brienne had sued the party who defined the standards for the physical, that party would have been free to exercise their judgment on the matter. That decision, *ab initio*, would have been clocked with qualified immunity.

Even if there were a difference of opinion as to the medical necessity of the examination, accepting one medical professional's judgment over another could not logically inform Rice that the nature of the examination requested by NLETC and as conducted by Haudrich implicated a clearly established constitutional rights. Simply stated, there is no clearly established legal

9

principle holding that is a violation of a female's civil rights for her to voluntarily be subjected to a medical examination that includes a visual examination of her intimate bodily parts as part of a pre-employment physical. See, *Aschroft v. Iqbal*, 556 U.S. 662 (2009).

Even if it is established that Haudrich, a third-party non-state actor, for some reason or another did not conduct the same visual examination of male candidates, that claim was never reported to Rice when he assumed command years later. The evidence is also undisputed that when he was advised of Brienne's "concern" he took action in the form of contacting agency counsel, calling a meeting of the head of human resources and requesting a follow up. This follow up resulted in Rice suggesting changes to the procedure to permit the trooper candidates to seek their own physician to conduct the examination if female candidates were uncomfortable with the third-party doctor doing so.

It is also undisputed that Brienne's original complaint was processed and investigated by the State Patrol *at the time*. We know that then Superintendent Sankey conducted an investigation and concluded that there was nothing improper with the examination. Sankey also asserts the defense of qualified immunity. So, if Sankey is afforded that defense, *a fortiori*, Rice, his successor would be entitled to the same defense.

As a matter of fact and law, Rice did not violate Brienne's constitutional rights. He was not employed by the State Patrol at the time of the alleged incident. Rice had nothing to do with the formulation of the NLETC standards. He was not aware of any issue with the medical necessity or propriety of those standards or that it was only being applied to females, if that was the case. He was not deliberately indifferent to, nor tacitly authorized, the alleged medical examination of which Brienne complains.

Therefore, Rice cannot be vicariously liable for any act of his subordinates that occurred prior to his command or acts or practices after he assumed command of which he was not aware. *Liebe v. Norton,* 157 F.3d 574, 579 (8th Cir.1998). *See White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). Nor can it be claimed that this novel issue about the propriety of the medical examination infers that Rice was somehow "plainly incompetent for not knowing the law". *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

## CONCLUSION

For the reasons set forth herein, and as argued by Defendant Sankey, Summary Judgment should be granted on Rice's claim of qualified immunity and the complaint dismissed.

BRADLEY RICE, Defendant

*s/Robert B. Creager*
Robert B. Creager # 15370
ANDERSON, CREAGER &
 WITTSTRUCK, P.C. LLO
1630 K Street
Lincoln, NE 68508
(402) 477-8800
Attorney for Defendant