IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRIENNE SPLITTGERBER, | |
| Plaintiff, | 8:17CV280 |
| vs. | MEMORANDUM AND ORDER |
| THE STATE OF NEBRASKA, THE NEBRASKA STATE PATROL, Defendants. | |

This matter is before the Court on defendants' motion for summary judgment, Filing No. 100, pursuant to Fed. R. Civ. P. 56. Defendants filed a supporting brief and evidence. Filing Nos. 101 and 99. Plaintiff filed a brief in opposition, Filing No. 103, and an index of evidence, Filing No. 102. Plaintiff filed this action alleging hostile work environment in violation of 42 U.S.C.A. § 2000e et seq.[1] Filing No. 9, Amended Complaint.

**BACKGROUND**

The Nebraska State Patrol hired plaintiff as an officer in early fall 2018. David Sankey served as the Colonel in charge of the Patrol until he retired on December 31, 2014. Bradley Rice was the Colonel in charge of the Nebraska State Patrol until July 2017. Stephen Haudrich is a physician licensed in the State of Nebraska and employed at Concentra Urgent Care, 4900 N. 26th Street, Suite 104, Lincoln, Nebraska at all relevant times herein. Defendants are State of Nebraska and the Nebraska State Patrol which is an agency of the State of Nebraska.

---

[1] Plaintiff filed numerous other claims, but those were dismissed by this Court. Filing No. 36, Memorandum and Order, at 15.

As a candidate for the State Patrol, plaintiff was required to submit to a pre-employment physical examination performed by the defendant, Dr. Haudrich, on behalf of the Nebraska State Patrol. The Nebraska Law Enforcement Training Center (NLETC) has guidelines and requirements for physical examinations. As stated in her amended complaint, plaintiff alleges:

> On September 11, 2014 Plaintiff during her pre-employment physical was instructed by Dr. Haudrich to remove her pants, lay on her back on the examination table, bend her knees to put her feet flat on the table and open her knees exposing her genitalia. Then Plaintiff was instructed to roll to the side with knees still bent and lift her right buttocks exposing her anus.

Filing No. 9, at pp. 3-4, ¶ 13. Dr. Haudrich performed the exam on September 11, 2014. A female witness was in the room. Plaintiff contends these are not medically necessary procedures and that she did not consent to the same. Plaintiff previously served as an officer in three different jurisdictions. Not once, she argues, was she ever asked to undergo an examination such as this one. She also contacted her treating physicians who allegedly told her that such an examination was not necessary or job-related. Further, she contends that even though she complained to her superiors as outlined below, at least the next two classes of females underwent the same examinations.

She reported this incident initially in October 2014 to her class leaders Derik Kermoade and Cassie Wegelin, and then to Sgt. Tony Kavan, and then to her superior, Captain Mark Williams. Major Kyle Otte ultimately informed Colonel Sankey of plaintiff's concerns, and Sankey asked Major Otte to investigate. Plaintiff was told an investigation would occur. She waited what appears to be a couple of years and then asked Rice about the investigation. She received an email regarding the investigation, and she was told that no charges would be filed and there was no evidence of wrongdoing. Filing 99-

1, p. 12, Depo. D. Sankey, 11:14 – 12:6; Filing 99-7, ¶¶ 12-13, Affid. of Sankey. She felt that no investigation was conducted.

She then contacted the new Superintendent Colonel, Brad Rice. Rice then instructed Patrol employees, including Agency Legal Counsel and the Human Resources Director, to contact the medical facility to determine what had occurred and inquire about their procedures for conducting the examination. Filing 99-14, Depo. B. Rice, 35:5-15. In July 2017 an investigation began regarding the handling of plaintiff's complaint. Lieutenant Lovelace was assigned to conduct an internal affairs investigation. He determined there was insufficient evidence of misconduct against any current State Patrol employee to continue the investigation. In July 2017, NSP Sergeant Phinney was assigned to do a criminal investigation, which was completed in December 2017.

The Plaintiff also alleges in her brief, but not in her amended complaint, that she was denied the opportunity to apply for a position as a criminal investigator after she complained about the examination and initiated this lawsuit. Initially, this position was opened to troopers in two counties, but not Kearney where plaintiff lived. However, the criminal investigator position was opened to troopers based in Kearney within days of the Plaintiff's resignation from the State Patrol.

Plaintiff claims the environment became a hostile one. She resigned in May of 2018. Plaintiff filed her EEOC Complaint which was received by the EEOC on May 25, 2017 relating to the incidents described above. Filing No. 102-5, Ex. 5. Plaintiff received

a Dismissal and Notice of Rights letter from EEOC which was issued on June 19, 2017. Filing No. 102-6, Ex. 6. The EEOC found plaintiff's claim to be untimely.[2]

**STANDARD OF REVIEW**

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477

---

[2] Plaintiff has also just recently, January 09, 2019, filed a retaliation complaint with the NEOC based on the NSP's failure to promote the Plaintiff to Investigator. Filing No. 102-7, Exh. 7.

U.S. 242, 250 (1986). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 251 (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

**DISCUSSION**

1. <u>Statute of Limitations</u>

The statute of limitations is triggered by the following:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C.A. § 2000e-5(e)(1).

"To exhaust her remedies, a Title VII plaintiff must timely file her charges with the EEOC and receive, from the EEOC, a 'right to sue' letter." *Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996)*. Defendants contend that when looking at the amended complaint, it is clear that the plaintiff filed her amended complaint with the Nebraska Equal Opportunity Commission ("NEOC") more than 300 days after the alleged wrongful conduct. The action occurred in the fall of 2014, and the EEOC claim was filed on May 22, 2017. Likewise, defendants contend that plaintiff received a letter from the NEOC indicating that her charge was untimely. Accordingly, defendants ask this Court to dismiss all Title VII claims against them.

The Supreme Court addressed the timing of a claim of hostile work environment, stating:

> The following scenarios illustrate our point: (1) Acts on days 1–400 create a hostile work environment. The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days? (2) Acts contribute to a hostile environment on days 1–100 and on day 401, but there are no acts between days 101–400. Can the act occurring on day 401 pull the other acts in for the purposes of liability? In truth, all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one "unlawful employment practice" and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole. Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim. On the other hand, if an act on day 401 had no relation to the acts between days 1–100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.
> Our conclusion with respect to the incidents that may be considered for the purposes of liability is reinforced by the fact that the statute in no way bars a plaintiff from recovering damages for that portion of the hostile environment that falls outside the period for filing a timely charge. Morgan correctly notes that the timeliness requirement does not dictate the amount

of recoverable damages. It is but one in a series of provisions requiring that the parties take action within specified time periods, see, e.g., §§ 2000e–5(b), (c), (d), none of which function as specific limitations on damages.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118–19 (2002).

Plaintiff asserts that her hostile work environment claim constitutes one unlawful employment practice and can be part of the single claim. *See Morgan*, 536 U.S. 118–19. The Supreme Court has stated "that a 'hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)) (holding that an individual could recover for acts occurring outside the statutory period if at least one act occurred within the time period and the acts were part of the same hostile work environment). She argues that the environment of harassment extends until at least the investigation concluded on March 31, 2017.

Plaintiff filed the NEOC discrimination charge more than 300 days after the alleged wrongful conduct dealing with the physical examination. Additionally, she received a letter from the NEOC saying her charge of discrimination was untimely. Defendants contend this is a case about a single act, and that time ran. Plaintiff received notification that the NSP had concluded their investigation on or about March 31, 2017. Filing No. 9 ¶ 11. In a somewhat similar scenario, the Eighth Circuit stated:

> MFA contends that the appellants failed to exhaust their administrative remedies because their EEOC complaints were based solely on the peeping and failed to mention the contamination and investigation allegations. We reject this argument because all three actions are sufficiently related to be part of the same claim for hostile work environment. The Supreme Court stated that a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (quoting 42

7

U.S.C. § 2000e-5(e)(1)) (holding that an individual could recover for acts occurring outside the statutory time period if at least one act occurred within the time period and the acts were part of the same hostile work environment). The Court explained that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct.... Such claims are based on the cumulative effect of individual acts." *Id.* at 115, 122 S.Ct. 2061. Cottrill and Combs each exhausted administrative remedies with respect to the hostile work environment claims because the peeping, the contaminated toilet seat and the MFA investigation are a related stream of incidents that are part of a single claim for hostile work environment sex discrimination. Because a hostile work environment sexual harassment claim is a single cause of action, the charged party was not deprived of notice of the charge.

*Cottrill v. MFA, Inc.*, 443 F.3d 629, 635 (8th Cir. 2006).

The Court finds the plaintiff has made a prima facie case of hostile work environment within the time frame permitted under the law. A hostile work environment claim is a continuing one. The lack of investigation for two years; the failure to document any investigation during that time; the lack of response from the chain of command to plaintiff; the alleged untruthful responses to plaintiff; and the limited investigation at a later date are all sufficient evidence to support a claim for a continuing violation, so as to permit a finding in this case that the statute of limitations did not toll. For these reasons, the Court will deny the defendants' motion on this basis.

2. *Evidence-merits*

Plaintiff alleges a hostile work environment. Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). "Discrimination based on sex which creates a hostile or abusive working environment violates Title VII." *McCown v. St. John's Health System, Inc.,* 349 F.3d 540, 542 (8th Cir. 2003). In order to bring a claim for hostile work environment, the Plaintiff must establish

8

"(1) that she is a member of a protected group; (2) that she was subject to unwelcome hostile work environment/sexual harassment; (3) that the harassment was based on sex; and (4) that the hostile environment/sexual harassment affected a term, condition, or privilege of employment." *McCurdy v. Arkansas State Police*, 375 F.3d 762, 767–68 (8th Cir. 2004) (internal citations omitted). The burden then shifts to the defendants to show a legitimate, nondiscriminatory reason for their actions. The final shift is to the plaintiff to show pretext.

The plaintiff is a member of a protected group based on her gender (female). The Eighth Circuit has indicated:

> The predicate acts which support a hostile-environment sexual-harassment claim need not be explicitly sexual in nature. *Hall v. Gus Construction Co., Inc.*, 842 F.2d 1010, 1014 (8th Cir.1988). Rather, the key issue "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, ——, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring). Hostile-environment sexual harassment is actionable under Title VII, when it is sufficiently patterned or pervasive. *Hall, supra,* 842 F.2d at 1014; *McKinney v. Dole*, 765 F.2d 1129, 1138 (D.C.Cir.1985). To determine whether a work environment is hostile or abusive, the adjudicator must consider all of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris, supra*, 510 U.S. at ——, 114 S.Ct. at 371. Psychological harm to the plaintiff is relevant, as one factor among many, but Title VII does not require concrete psychological harm. *Id*. Once an employer becomes aware of sexual harassment, it must promptly take remedial action which is reasonably calculated to end the harassment. *Barrett v. Omaha National Bank*, 726 F.2d 424 (8th Cir.1984).

*Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir. 1993). *See also Pedroza v. Cintas Corp. No. 2,* 397 F.3d 1063, 1068 (8th Cir. 2005).

The Supreme Court has stated that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81 (1998) (citation omitted). "Thus, the fourth part of a hostile environment claim includes both [an] objective and subjective component: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." *See Duncan v. General Motors Corp.,* 300 F.3d 928, 934 (8th Cir. 2002). In determining whether or not the alleged harassment is severe and pervasive requires examining the totality of circumstances surrounding the discriminatory conduct. *Id.* Factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* However, courts are reminded that Title VII is "not designed to purge the workplace vulgarity." *Id.* (citation omitted).

Plaintiff opposes the motion for summary judgment. She contends that the invasive medical examination was conducted on candidates inconsistently, as many of the male candidates, if not all but one, did not undergo such examinations. She contends that the Nebraska State Patrol attempted to cover up any wrong doing, conducted sham investigations, and created a hostile work environment for her. Further, she asserts that the medical standards adopted by the Nebraska State Patrol are partially controlled by the NLETC but are partially controlled by the NSP. There was no written report of the initial investigation by Sankey. In addition, plaintiff contends that there is no relationship to the standards relied upon by the defendants, under Sections 13 and 14 of the Medical

report to note fissure, fistula and hemorrhoids, as it is not possible to diagnose those medical issues with just visual observations. In any event, she again reiterates that these exams were not conducted on the male officers and were not job-related.

Defendants rely on the following arguments to support their defense. Section No. 13 of 2014 Medical Examination Report, "RECTAL," provides that three conditions were to be assessed – fissure, fistula, and hemorrhoids. Section No. 14, "GENITOURINARY SYSTEM," instructed Dr. Haudrich to "note any abnormalities." Filing 99-9, p. 8; Filing 99-6, pp. 2-5, 10-11, Defendant Haudrich's Answers to Plaintiff's Interrogatories, Response to Interrogatory Nos. 3, 10, 11. Defendants argue that the genital exam was included for all candidates, both male and female. The Nebraska Police Standards Advisory Council sets the physical qualifications for State Trooper candidates. Defendants contend that Dr. Haudrich visually and physically inspected the genitals of male State Trooper candidates to detect inguinal hernia and to observe visible abnormalities of the male's penis and scrotum to satisfy the genitourinary element of the physical examination.

The plaintiff has alleged she is a member of a protected class; that the environment was hostile to her based on her gender; that the behavior of the NSP clearly affected her work environment; and she suffered a hostile environment that affected the conditions and privileges of her employment. In response, defendants contend that the medical examination is determined by the outside Council and was applied to both men and women alike. Plaintiff argues this is pretext as defendants did nothing to genuinely investigate her actual claims.

The Court finds that plaintiff has alleged, but not supported with evidence, sufficient allegations of a hostile work environment. The plaintiff alleges an initial discrimination, followed by a promised investigation that allegedly did not happen, reports which did not happen, communication to the plaintiff which did not happen, that led to a hostile working environment for the plaintiff. She contends she was discriminated against initially, as the exam was not performed on her male colleagues and was not job related. Future classes of women were likewise subjected to this same examination. Further, after filing this lawsuit, plaintiff claims, but does not plead, that she was denied a position as a criminal investigator. An open position existed but was designated for a district just outside of Plaintiff's family home in Kearney. Within a few days of the plaintiff's resignation from the state patrol, this position was opened to troopers based in Kearney where plaintiff resided. Plaintiff resigned from her job and sought counseling services.

There is no evidence in the record that the physical standards for the examination were inappropriate for law enforcement officers; no evidence the examination was performed outside the medical standards of care; and no evidence the examination failed to conform to the physical standards required by the Nebraska Law Enforcement Academy. Other than the plaintiff's hearsay statement, there is no evidence the physician in question did not perform similar examinations equally on males and females. Further, there is no evidence in the record that the time it took to generate the report concerning the plaintiff's complaints was any longer or shorter than reports responding to any similar complaints by males.

The defendants produced unrebutted evidence that the physical requirements for State Patrol entry are not set by them, but are instead set by the Nebraska Law

12

Enforcement Academy. The Academy trains officers not only for the State Patrol but for agencies throughout the state. There is no evidence in the record, other than plaintiff's bare hearsay and foundationless assertions, that the physical standards are medically inappropriate or that the examining physician inappropriately conducted the examination. Other than the plaintiff's unsubstantiated assertions, there is no competent evidence there was or is any difference in the administration of the physical examinations in question by the physician in question. The plaintiff's only evidence of hostile work environment is the alleged delay in following through with an investigation of her complaints concerning the physical examination. Ultimately, a report was prepared and the policy concerning who administers physical examinations was amended. Her allegations concerning a failure to promote are not plead in her amended complaint and are not relevant to this case. Her retaliation claim is not plead and may be the subject of another suit, but not this one. Without additional alleged harassing workplace conduct, the protracted investigation and report production in this case does not constitute a hostile work environment as a matter of law.

THEREFORE, IT IS ORDRED THAT defendants' motion for summary judgment, [Filing No. 100](), is denied in part and granted in part consistent with this order. The plaintiff's case is hereby dismissed.

Dated this 18th day of March, 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge